# STATE OF TENNESSEE 21ST JUDICIAL DISTRICT
## WILLIAMSON COUNTY, FRANKLIN, TENNESSEE 37064
## CIRCUIT COURT

COPY

Liberty Mutual Fire Insurance Company, a/s/o Robert and Sara Fischer
PLAINTIFF

VERSUS                                              CIVIL ACTION NO. 2013-484

Hawkeye Manufacturing, Inc., and Balboa Water Group, LLC
DEFENDANT

## SUMMONS

To the above named Defendant: Balboa Water Group, Inc., c/o Eric Kownacki, Registered Agent
1382 Bell Avenue, Tustin, CA 92780

You are summoned to appear and defend a civil action (Complaint of Divorce) filed against you in Circuit Court, Williamson County, Tennessee, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below:

ATTORNEY FOR PLAINTIFF: Jeremy L. Jones, Cozen O'Connor          Phone No. 704.376.3400
301 S. College St., Suite 2100
Charlotte, North Carolina 28202

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: Oct. 4, 2013.

DEBBIE McMILLAN BARRETT
Circuit Court Clerk, Williamson County

By: _____
Deputy Clerk

TO THE SHERIFF:

Please execute this summons and make your return hereon as provided by law.

DEBBIE McMILLAN BARRETT
Circuit Court Clerk, Williamson County

Received this summons for service this _____ day of _____, 20____.

If you have a disability & require assistance, please Call 615-790-5428

SHERIFF

EXHIBIT A

## RETURN ON PERSONAL SERVICE OF SUMMONS

Case No. _____

I hereby certify and return, that on the _____ day of _____, 20__, I served this summons together with the complaint herein as follows: _____

_____

_____

_____
SHERIFF
BY: _____

I failed to serve this summons within 30 days after its issuance because: _____

_____

_____
Sheriff

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____, 20__ I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in Case No. _____ to the defendant, _____. On the _____ day of _____, 20__ I received the return receipt for said registered or certified mail, which had been signed by _____ on the _____ day of _____, 20__. Said return receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON
THIS _____ DAY OF _____, 20___.

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY OR OTHER PERSON
AUTHORIZED BY STATUTE TO SERVE PROCESS

_____ NOTARY PUBLIC or _____ DEPUTY CLERK

MY COMMISSION EXPIRES: _____

TO THE DEFENDANT(S):
 Tennessee law provides a four thousand dollar ($4,000.00) Personal Property exemption from execution or seizure to satisfy a judgement. If a judgement should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; However, unless it is filed before the judgement becomes final, it will not be effective as to any execution of garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items or necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Pursuant to section T.C.A. 26-518-523.

ATTACH RETURN
RECEIPT HERE

(IF APPLICABLE)

STATE OF TENNESSEE
COUNTY OF WILLIAMSON

(To be completed only if copy certification required).

I, **DEBBIE McMILLAN BARRETT**, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

DEBBIE McMILLAN BARRETT, CLERK

By:_____D.C.

| | |
|---|---|
| **Liberty Mutual Fire Insurance Company,** a/s/o Robert and Sara Fischer,<br><br>　　　　Plaintiff<br>vs.<br><br>**Hawkeye Manufacturing, Inc.,** a Virginia corporation, and **Balboa Water Group, LLC,** a Delaware Limited Liability Company,<br><br>　　　　Defendants. | Case No. 2013-484<br><br>**JURY DEMAND ENDORSED HEREON** |

## Complaint

Plaintiff Liberty Mutual Fire Insurance Company a/s/o Robert and Sara Fischer brings this lawsuit timely against Hawkeye Manufacturing, Inc., a Virginia corporation, and Balboa Water Group, LLC, a Delaware Limited Liability Company and alleges the following:

## Parties

1. Plaintiff Liberty Mutual Fire Insurance Company is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts. At all relevant times, Plaintiff was in the business of providing insurance coverage and was authorized by the Tennessee Department of Commerce & Insurance to provide coverage in the State of Tennessee; specifically, in this case, providing property insurance to Robert and Sara Fischer for their property located at 4028 Randall Lane, Thompsons Station, Tennessee (hereinafter the "House").

2. Defendant Hawkeye Manufacturing, Inc. (hereinafter "Hawkeye"), is a Virginia corporation with its principal place of business at 1500 Commerce Road, Richmond Virginia, is

in the business of manufacturing spas, and upon information and belief, Hawkeye is authorized to conduct such business in Williamson County, Tennessee. Hawkeye may be served through its Registered Agent, William Baldwin III, Marchant Thorsen Honey Baldwin & Meyer LLP, 5600 Grove Avenue, Richmond, Virginia 23226,

3.      Defendant Balboa Water Group (hereinafter "Balboa") is a Delaware Limited Liability Company in the business of manufacturing electronic control systems for the leisure water industry, and upon information and belief, Balboa is authorized to conduct such business in Williamson County, Tennessee. Balboa may be served through its Registered Agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## Jurisdiction and Venue

4.      This Court may exercise personal jurisdiction over Hawkeye and Balboa pursuant to Tennessee Statute § 20-2-223(a) in that both regularly transact business in the State of Tennessee and the alleged tortious injuries occurred in Williamson County, Tennessee.

5.      Venue is proper in this Court because the alleged events giving rise to this cause of action occurred in Williamson County, Tennessee, and the real property that was damaged is located in Williamson County, Tennessee.

## Factual Allegations

6.      On October 11, 2008, Robert and Sara Fischer (hereinafter the "Fischers") purchased a Hawkeye Spa, Model 67FS, Serial Number 811109 (hereinafter the "Spa") directly from Hawkeye.

7.      A copy of the invoice for the Spa is attached as Exhibit 1.

8. A Control Box, Series VS500, Model #54370-03, manufactured by Balboa, was a component part incorporated into the Spa (hereinafter the "Control Box").

9. Upon information and belief, Hawkeye purchased the Control Box directly from Balboa.

10. Upon information and belief, Hawkeye selected and installed the Control Box when manufacturing the Spa.

11. The Fischers installed the Spa on the exterior of the House.

12. The following satellite image of the House from www.bing.com illustrates the fixed location of the Spa from the time the Spa was delivered to the House until the time of the Fire:



13. On June 18, 2012, a fire originated at the Spa (hereinafter the "Fire").

14. The Fire caused substantial damage to the House and contents.

15. The Fire originated at the Control Box.

- 3 -

16. The following image illustrates the post-fire condition of the Spa and House:



17. Between the time the Spa was delivered to the House and the time of the Fire, no alteration, modification, service, or repair work of any kind was performed on the Spa.

18. Between the time the Spa was delivered to the House and the time of the Fire, the Fischers experienced no problems, failures, or unusual operation associated with the Spa.

19. Between the time the Spa was delivered to the House and the time of the Fire, no one warned or advised the Fischers of defects in the Spa.

20. Between the time the Spa was delivered to the House and the time of the Fire, the Spa was used in a manner and for purposes foreseeable to Hawkeye and Balboa.

21. Between the time the Spa was delivered to the House and the time of the Fire, the Spa was not subjected to misuse or abuse.

22. At the time of the Fire, the Fischers had a valid and enforceable insurance policy with Plaintiff which provided coverage for damage to the House and contents.

- 4 -

23. Pursuant to the terms of the policy, Plaintiff paid $305,220.85 to the Fischers as a result of the Fire.

24. To the extent of the payments made to the Fischers, Plaintiff became legally, contractually, and equitably subrogated to the rights and claims of the Fischers arising out of or related to the Fire.

### Count I - Strict Liability Against Hawkeye

25. Plaintiff incorporates and re-alleges, as if fully set forth herein, the allegations contained in all preceding paragraphs.

26. The Spa constitutes a "product" a defined under Tenn. Code Ann. § 29-28-102(5).

27. Hawkeye was the "manufacturer" of the Spa engaged in the business to design, fabricate, produce, compound, process, assemble and market a product, as that term is defined under Tenn. Code Ann. § 29-28-102(4)

28. Hawkeye manufactured, sold, and distributed the Control Box and originally placed it into the stream of commerce.

29. The Spa is the type of product that Hawkeye is in the business of manufacturing, selling, and distributing.

30. The Spa was defective and unreasonably dangerous in that it failed during normal operation and caused the Fire.

31. The Spa was in the defective and unreasonably dangerous condition at the time that it left the possession or control of Hawkeye.

32. The Spa was expected to and did reach a consumer without substantial change in its condition.

33. The Spa was used for its intended purpose and/or for a purpose and in a manner that was reasonably foreseeable by Hawkeye.

34. The Fire occurred as a result of the defective and/or unreasonably dangerous condition of the Spa.

35. Hawkeye knew or should have known that introducing a Spa into the stream of commerce in a defective and/or unreasonably dangerous condition could potentially cause a fire.

36. As a direct and proximate result of the aforesaid defective and unreasonably dangerous condition of the Spa, Plaintiff incurred the damages alleged above.

WHEREFORE, Plaintiff respectfully requests judgment against Hawkeye for damages, together with interest, costs of this action as allowed by law, and such other relief as this Court deems just and proper.

### Count II – Negligence Against Hawkeye

37. Plaintiff incorporates and re-alleges, as if fully set forth herein, the allegations preceding Count I.

38. Hawkeye designed, manufactured, and distributed the Spa and originally placed it into the stream of commerce.

39. Hawkeye had a duty to design, manufacture, and distribute spas which were safe and free of defects.

40. Hawkeye had a duty to warn persons who might foreseeably use spas designed, manufactured, and distributed by Hawkeye which contain a latent and unreasonably dangerous defect.

41. It was foreseeable to Hawkeye that if Hawkeye designed, manufactured, and distributed spas with latent and unreasonably dangerous defects and/or if Hawkeye failed to warn

of such defect, persons using such defective spas, such as the Fischers, could incur personal injury and/or property damage.

42. The Fire was the result of a malfunction of the Spa during the course of its ordinary use.

43. The malfunction of the Spa was due to a latent defect in the Control Box.

44. The Spa contained the latent defect in the Control Box when it left Hawkeye's possession and control.

45. Hawkeye breached its duties as a manufacturer by designing, manufacturing, and distributing the Spa in a defective condition and/or by failing to provide adequate warning and/or instruction regarding the defective condition which was known or should have been known to Hawkeye and/or by failing to adopt a safer, practical, feasible, or otherwise reasonable alternative design or formulation for the Spa that could have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Spa and/or other negligence that may be disclosed during discovery.

46. In the ordinary course of events, fires do not originate in spas if due care has been exercised.

47. Between the time the Spa was delivered to the House and the time of the Fire, the Control Box was under the "exclusive control" of Hawkeye, as that term has been applied by the Tennessee Supreme Court.

48. As a direct and proximate result of the aforesaid negligence and/or negligent acts and/or negligent omissions of Hawkeye, Plaintiff incurred the damages alleged above.

WHEREFORE, Plaintiff respectfully requests judgment against Hawkeye for damages, together with interest, costs of this action as allowed by law, and such other relief as this Court deems just and proper.

### Count III – Breach of Warranty against Hawkeye

49. Plaintiff incorporates and re-alleges, as if fully set forth herein, the allegations preceding Count I.

50. Hawkeye was the seller of the Spa.

51. As part of the sale of the Spa, Hawkeye impliedly warranted that the Spa would be free of defects in design, assembly, component parts, and workmanship and/or would be merchantable and/or would be fit for a particular purpose.

52. The Fischers reasonably relied upon such warranties.

53. The Fire was the result of a malfunction of the Spa during the course of its ordinary use.

54. The malfunction of the Spa was due to a defective condition in the Control Box.

55. The Spa contained the defective condition when it left Hawkeye's possession and control.

56. The Fischers used the Spa for its intended and/or reasonably foreseeable purpose.

57. Hawkeye breached the aforesaid warranties by providing a Spa in a defective condition.

58. Plaintiff provided timely notice of the Fire to Hawkeye.

59. As a direct and proximate result of the foregoing breach of warranties by Hawkeye, Plaintiff incurred the damages alleged above.

WHEREFORE, Plaintiff respectfully requests judgment against Hawkeye for damages, together with interest, costs of this action as allowed by law, and such other relief as this Court deems just and proper.

### Count IV – Strict Liability against Balboa

60. Plaintiff incorporates and re-alleges, as if fully set forth herein, the allegations preceding Count I.

61. The Control Box constitutes a "product" as defined under Tenn. Code Ann. § 29-28-102(5).

62. Balboa was the "manufacturer" of the Control Box engaged in the business to design, fabricate, produce, compound, process or assemble the Control Box, as that term is defined under Tenn. Code Ann. § 29-28-102(4).

63. Balboa manufactured, sold, and distributed the Control Box and originally placed it into the stream of commerce.

64. The Control Box is the type of product that Balboa is in the business of manufacturing, selling, and distributing.

65. The Control Box was defective and unreasonably dangerous in that it failed during normal operation and caused the Fire.

66. The Control Box was in the defective and unreasonably dangerous condition at the time that it left the possession or control of Balboa.

67. The Control Box was expected to and did reach a consumer without substantial change in its condition.

68. The Control Box was used for its intended purpose and/or for a purpose and in a manner that was reasonably foreseeable by Balboa.

69. The Fire occurred as a result of the defective and/or unreasonably dangerous condition of the Control Box.

70. Balboa knew or should have known that introducing a Control Box into the stream of commerce in a defective and/or unreasonably dangerous condition could potentially cause a fire.

71. As a direct and proximate result of the aforesaid defective and unreasonably dangerous condition of the Control Box, Plaintiff incurred the damages alleged above.

WHEREFORE, Plaintiff respectfully requests judgment against Balboa for damages, together with interest, costs of this action as allowed by law, and such other relief as this Court deems just and proper.

### Count V – Negligence Against Balboa

72. Plaintiff incorporates and re-alleges, as if fully set forth herein, the allegations preceding Count I.

73. Balboa designed, manufactured, and distributed the Control Box and originally placed it into the stream of commerce.

74. Balboa Hawkeye had a duty to design, manufacture, and distribute control boxes which were safe and free of defects.

75. Balboa had a duty to warn persons who might foreseeably use control boxes designed, manufactured, and distributed by Balboa which contain a latent and unreasonably dangerous defect.

76. It was foreseeable to Balboa that if Balboa designed, manufactured, and distributed control boxes with latent and unreasonably dangerous defects and/or if Balboa failed

to warn of such defect, persons using such defective control boxes, such as the Fischers, could incur personal injury and/or property damage.

77. The Fire was the result of a malfunction of the Control Box during the course of its ordinary use.

78. The malfunction of the Control Box was due to a latent defect.

79. The Control Box contained a latent defect when it left Balboa's possession and control.

80. Balboa breached its duties as a manufacturer by designing, manufacturing, and distributing the Control Box in a defective condition and/or by failing to provide adequate warning and/or instruction regarding the defective condition which was known or should have been known to Balboa and/or by failing to adopt a safer, practical, feasible, or otherwise reasonable alternative design or formulation for the Control Box that could have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Control Box and/or other negligence that may be disclosed during discovery.

81. As a direct and proximate result of the aforesaid negligence and/or negligent acts and/or negligent omissions of Balboa, Plaintiff incurred the damages alleged above.

WHEREFORE, Plaintiff respectfully requests judgment against Balboa for damages, together with interest, costs of this action as allowed by law, and such other relief as this Court deems just and proper.

Respectfully submitted this 3rd day of October, 2013.

COZEN O'CONNOR

By: _____
Jeremy L. Jones (B.P.R. No. 029988)
301 South College Street
Suite 2100
Charlotte, North Carolina 28202
Phone: 704-376-3400
Fax: 704-334-3351

ATTORNEY FOR PLAINTIFF

LEGAL\17064884\2